UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEMARCO SLAUGHTER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:02-CV-1928 CAS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on petitioner Demarco Slaughter's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The government filed a response and petitioner filed a reply. For the following reasons the Court will deny petitioner's motion.

**I. Background**

Petitioner DeMarco Slaughter pled guilty to possession with intent to distribute cocaine base (crack) in violation of 21 U.S.C. § 842(a)(1) on October 27, 1999. The Court sentenced Slaughter to 188 months in prison and four years of supervised release on December 18, 2001. Slaughter did not file a direct appeal. He timely filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.[1] In his motion, Slaughter asserts three grounds for relief based on ineffective assistance of counsel. Slaughter contends that his counsel was ineffective because she waived the evidentiary hearing, did not explore all possible defenses, and did not object to the presentence

---

[1]The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a one year limitation on filing a motion under 28 U.S.C. § 2255. The period of limitations begins to run when a conviction becomes final. See 28 U.S.C. § 2255. If a petitioner has not filed a direct appeal, his conviction becomes final on the last day he could have filed an appeal with the Eighth Circuit Court of Appeals. Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999). Petitioner's motion was filed within those time limitations.

investigation report. The government responds that petitioner's motion should not be granted because his counsel's representation was not constitutionally infirm.

**II. Standard**

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962).

Ineffective assistance of counsel claims are governed by the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the Strickland analysis, the petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. Id. "To prevail on a claim of ineffective assistance of counsel where there has been a guilty plea, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Gumangan v. United States, 254 F.3d 701, 705 (8th Cir. 2001). It is a heavy burden to establish ineffective assistance of counsel pursuant to § 2255. DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000) (citing United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)). "As part of [her] representation, an attorney must make reasonable investigations or make reasonable decisions to forego particular investigations." Ingrassia v. Armontrout, 902 F.2d 1368, 1370 (8th Cir. 1990).

**III. Discussion**

Slaughter asserts in his petition that his attorney was ineffective for waiving an evidentiary hearing, not exploring all avenues of defenses, and for not objecting to the presentence investigation report. The Court will address each claim in turn.

**A. Waiver of Evidentiary Hearing**

Slaughter's first claim for relief asserts that his counsel was ineffective for waiving the evidentiary hearing. In support of his claim, Slaughter asserts the following:

> I made the call to my attorney and she stated the prosecutor has made an offer. Which was the government would dismiss count 1 & 3 of the indictment for a guilty plea to count 2 and that I [would] not be enhanced as a career offender, but I would receive a two point enhancement for the firearm. Also that my sentence range would be from 5 to 10 years but leaning closer to 10 years with my criminal history. Counsel also stated that the offer would only stand if I waived my evidentiary hearing, so under counsel's advice I waived my evidentiary hearing which was the next day July 10, 2001. When I asked my counsel could I get this offer in writing, she stated to me the prosecutor would not do this, but the government would mention this at sentencing.

(Slaughter Aff. ¶ 4). Slaughter asserts that "counsel advised petitioner that there was no need for the lab report or any discovery and that I was to waive the hearing, stating that the prosecutor advised her of this per request." (Mot. p. 5). Slaughter accepted the government's offer and withdrew his motion to suppress on July 10, 2001. Slaughter pled guilty on August 7, 2001. On the date of his plea, Slaughter signed a "Stipulation of Facts Relative to Sentencing," which stated:

> (2) **Habeas Corpus**; The defendant states that he is fully satisfied with the representation he has received from his counsel, that they have discussed the government's case, possible defenses and defense witnesses, and that his counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and his defense . . . .
>     . . . .
> 4. **FACTS**: During the month of October 1999, St. Louis County police officers were conducting an investigation into the activities of Demarco Slaughter for distributing quantities of cocaine base (crack). In furtherance of their investigation,

3

> the officers obtained a search warrant for the residence of the Defendant at 1090 Thompson. The search warrant was executed on October 27, 1999, with the Defendant and another individual being present. Seized pursuant to the search warrant was a quantity of cocaine base (crack), marijuana, drug paraphernalia, and firearms. The Defendant was placed under arrest and after being advised of his Miranda rights, made post-arrest admissions concerning the seized drugs and firearm.

(Stipulation of Facts Relative to Sentencing §§ 2(B)(2), 4).

Based on the evidence in the record, Slaughter cannot establish either prong of the Strickland analysis. "A habeas petitioner must show that counsel's representation fell below an objective standard of reasonableness . . . ." Ingrassia, 902 F.2d at 1370. Slaughter has not submitted any specific facts showing that the waiver of the evidentiary hearing constituted a deficient performance. It would not be objectively unreasonable for counsel to advise her client to accept a plea agreement that would dismiss two counts of an indictment in exchange for a waiver of an evidentiary hearing and a guilty plea on the remaining count. The purpose of a suppression hearing is to prevent illegally obtained statements and evidence from being used at trial. After plaintiff accepted the government's plea offer, there was no need for a suppression hearing because there would be no trial.

Petitioner does not meet the second prong of Strickland, because he has failed to show that but for his counsel's waiver of the evidentiary hearing, he would not have pled guilty. If petitioner were unsuccessful at the evidentiary hearing, petitioner still had the opportunity to plead guilty before trial. In fact, many defendants plead guilty after unsuccessful suppression hearings. Further, even if petitioner had not waived the evidentiary hearing, it is unlikely that his motion to suppress evidence and statements would have succeeded on the merits. See Dyer v. United States, 23 F.3d 1424, 1426 (8th Cir. 1994) (petitioner's claims of ineffective assistance of counsel fail because petitioner wanted counsel to pursue meritless claim). Initially, petitioner had sought to suppress evidence and statements he made to the police. The police reports in this case stated that petitioner gave voluntary statements to the police both before and after receiving his Miranda warnings and the

4

police found drugs, drug paraphernalia, and a gun in petitioner's room. These statements and a list of the evidence seized were memorialized in the police report as follows:

> When I escorted Slaughter outside the door, he immediately stated, "All this shit on me and Durell. They ain't got nothing to do with what's in the house." At this point I advised Slaughter of his Miranda rights, to which he indicated that he knew what his rights were. I asked Slaughter if there was anything in the house that shouldn't be in there and he stated, "I got a little rock and some weed in my bedroom." Slaughter motioned to the front bedroom as being his. Slaughter also stated that he had a .45 caliber handgun in his closet in the bedroom. I advised Slaughter that I would be speaking with him later at the police station.
>
> . . . .
>
> Located in Slaughter's bedroom:
>
> - off white rock like substance (crack cocaine) found on the floor of closet
> - green vegetation (marijuana) found on a nightstand
> - "bong" smoking device
> - Norinco .45 caliber handgun, seriel #302958, found in Slaughter's closet (the weapon was loaded with six rounds of ammunition)
>
> . . . .
>
> S/A Holdiman and I then advised Slaughter of his rights utilizing the same type of form. Slaughter indicated that he understood his rights and would waive them to speak to us. Slaughter was asked about the .45 caliber handgun found in his bedroom. Slaughter stated that he purchased the .45 caliber approximately two to three weeks ago for $450. Slaughter bought the gun from an individual named Eric who lived in the Hathaway trails subdivision near St. Louis County First Police Precinct.
>
> Slaughter stated that the crack cocaine found in his room was his and he purchased it from Durell. Slaughter obtained the marijuana found in his room from a subject known as "Shawn D". Slaughter could provide nothing further about Shawn. Slaughter stated that he used to purchase between 1/8 and 1/4 ounces of crack a day and then sell it for a profit. Slaughter bought that amount for approximately one year; however, he stopped doing that much business approximately four to six months ago.

(Resp.'s Ex. 3).

Slaughter has not asserted any facts that would show he could have prevailed on a motion to suppress or that if he had an evidentiary hearing without success, he would not have pled guilty

thereafter. The statements made to the police would not have been suppressed. As to the statement petitioner gave to the officer before being given a Miranda warning,[2] the statement was voluntary. "The requirements of Miranda arise only when a defendant is both in custody and being interrogated." United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005). Although petitioner was in custody, petitioner has not shown that he would have any evidence that he was being interrogated by police when he made the first statement. "Voluntary statements that are not in response to interrogation are admissible with or without the giving of Miranda warnings." Londondio, 420 F.3d at 778 (citing United States v. Head, 407 F.3d 925, 928 (8th Cir. 2005)). It is also unlikely that the other statements given after the Miranda warning would be suppressed. Petitioner gave the police information regarding the location and type of evidence that was eventually seized and signed a waiver of his right to remain silent and to have counsel present. (Resp.'s Ex. 2). Any statements made after Slaughter waived his Miranda rights are admissible because he knowingly and voluntarily waived his rights and "his earlier unwarned statement did not result from coercion or a calculated effort to undermine his will." United States v. Briones, 390 F.3d 610, 614 (8th Cir. 2004).

The drugs and gun seized would also be admissible into evidence. The police obtained a search warrant of petitioner's residence. Therefore, for the drugs and gun to be suppressed, petitioner would have to challenge the search warrant. The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable search or seizure. U.S. CONST. AMEND IV. "Before a warrant may issue, the issuing magistrate must be convinced that, based on the totality of circumstances, there is a 'fair probability' that evidence of a crime or contraband will be found in

---

[2]"As a procedural safeguard, an individual must be warned about the rights encompassed in the privilege against self-incrimination [guaranteed by the Fifth Amendment of the United States Constitution] before 'an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning.'" United States v. Wallace, 323 F.3d 1109, 1112 (8th Cir. 2003) (quoting Miranda v. Arizona, 384 U.S. 436, 479 (1966)).

the place to be searched." United States v. Vaudt, 413 F.3d 724, 726 (8th Cir. 2005) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Additionally, probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence." Vaudt, 413 F.3d at 726 (citing United States v. Terry, 305 F.3d 818, 823 (8th Cir. 2002)) (internal quotations omitted). There is no evidence that would support a claim that the magistrate was not neutral or detached. Examination of the affidavit in support of the search warrant shows that there was probable cause to issue the search warrant. (See Resp.'s Ex. 1). Therefore, if an evidentiary hearing had been held, it would be unlikely that the Court would have suppressed any evidence in this action.

Finally, the Court notes that plaintiff entered a guilty plea and stipulated to the facts surrounding his arrest and the seizure of evidence and that he was satisfied with his counsel's performance. Based on the foregoing, the Court finds that petitioner did not receive ineffective assistance of counsel in violation of the Constitution because of the waiver of an evidentiary hearing.

**B. Failure to Explore All Areas of Defense**

In his second claim for relief, Slaughter states, "Had counsel read the full report she would have noticed that I wasn't the person who sold the drugs to the informant. Had counsel read she would clearly see there is no attempt to distribute on my behalf nor sale." (Mot. p. 5). Petitioner also states the following:

> I told Counsel Attamack-Moore that I was not the one who sold drugs to the informant, nor did I have any intent to distribute a controlled substance. I also told the police in the night of question October 27, 2000, that I quit selling drugs 4 to 6 months before this date. The drugs in my bedroom with the smoking device, as you can clearly see, and as I informed counsel, was for personal use. I also stated to the police in the night in question that I bought the drugs in question for personal use from Durell Irving. All of these facts can be proven by the government's exhibit 3 of the Saint Louis County Police Department Investigative Report, on page 7. Not once but twice did the CI buy drugs from Durell Irving on October 22, 1999 and October 27, 1999.

7

(Slaughter Aff. ¶ 3). Petitioner's arguments are legally unavailing. Slaughter pled guilty to possession of cocaine with an intent to distribute. It is true the police report does not state that Slaughter sold drugs to the confidential informant, however, this does not automatically mean petitioner could not be charged with possession with intent to distribute. Petitioner told police about the drugs in his bedroom and asserted his ownership of the crack and marijuana found there. He admitted that he had previously sold drugs. The police report, which the petitioner asks the Court to reply upon, states that petitioner told the officer "he used to purchase between 1/8 and 1/4 ounces of crack a day and then sell it for a profit" and that he "bought that amount for approximately one year; however, he stopped doing that much business approximately four to six months ago." (Resp.'s Ex. 3). Petitioner does not refute the validity of any of this evidence. Most importantly, in the Stipulation of Facts Relative to Sentencing, it states:

> 5. **ELEMENTS OF THE OFFENSE**: The defendant fully understands the elements of the crime which he admits to knowingly committing and for which he admits there is a factual basis are:
> One, the defendant was in possession of cocaine base (crack) in excess of 5 grams;
> Two, the defendant knew that he was in possession of cocaine base (crack); and
> Three, the defendant intended to distribute some or all of the cocaine base (crack) to another person.

(Stipulation of Facts Relative to Sentencing § 5). Based on the foregoing, petitioner has not shown how his attorney was deficient in her performance as counsel. It would not be objectively unreasonable for counsel to forego investigating who sold drugs to the confidential informant because that was irrelevant to petitioner's case and petitioner was not accused of selling drugs to the confidential informant. Also, the police report that petitioner relies upon only shows that petitioner told the police officers he sold cocaine in amounts less than 1/8 and 1/4 ounces in the previous six months.

8

Also, assuming petitioner's counsel did not read the police report and was deficient in doing so, petitioner has not shown prejudice. "If the claimed error is counsel's failure to notify the petitioner of a potential defense, the inquiry 'will largely depend on whether the affirmative defense would have likely succeeded at trial.'" Gumangan, 254 F.3d at 705 (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). It is clear from the above discussion that petitioner's defense that he did not sell drugs to the confidential informant and that he had no intent to distribute drugs would be unlikely to succeed at trial in view of all of the evidence. Therefore, petitioner's claim of ineffective assistance of counsel regarding failure to investigate possible defenses fails as a matter of law.

**C. Failure to Object to Presentence Investigation Report**

Slaughter's final claim is that his counsel rendered ineffective assistance because she failed to object to the presentence investigation report. In his petition, Slaughter states, "The total amount should have been contested #5 in PSI in which I should be able to confront my witnesses to prove that I never sold drugs or had the intent at the present time." It appears from petitioner's motion that he is asserting that his attorney should have objected to the information contained in paragraph five of the presentence investigation report, which states:

> After receiving information from a reliable confidential informant that narcotics were being sold at 1090 Thompson, Florissant, Missouri 63033, officers with the S. Louis County, Missouri Police Department initiated an investigation. Officers determined, after conducting controlled purchases at the residence, that narcotics were in fact being sold by individuals in the residence.

(Presentence Investigation Report ¶ 5).

The Court finds that this claim fails as well. At Slaughter's sentencing, he was specifically asked if he had any objections to the presentence investigation report. (R. at 2). Slaughter responded that he had an objection and his attorney explained that Slaughter objected to the date listed as the

9

date he came into federal custody because it would affect the amount of time he would receive as credit against his sentence. (R. at 2-3). Petitioner did not object to anything else in the report.

Slaughter cannot show any specific facts that demonstrate his attorney was deficient by not objecting to paragraph 5 of the presentence report. The paragraph cited does not mention petitioner by name. The paragraph states that the police confirmed that narcotics were being sold at the location. Slaughter has not established that but for his attorney's failure to object, he would not have pled guilty. Petitioner claims that he should have had the "opportunity to confront my witnesses." "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony would have probably changed the outcome of the trial." Hadley v. Groose, 97 F.3d 1131, 1135 (8th Cir. 1996) (citing Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994)). Slaughter has not identified any potential witnesses, the content of their testimony, and how their testimony would have helped Slaughter regarding an objection to his presentence report.

Finally, petitioner pled guilty to possession of crack cocaine with the intent to distribute. It is well established that entry of an unconditional guilty plea waives all challenges to the prosecution of a criminal case, except for those related to jurisdiction. See United States v. Winheim, 143 F.3d 1116, 1117 (8th Cir. 1998); Smith v. United States, 876 F.2d 655, 657 (8th Cir.), cert. denied, 493 U.S. 869 (1989). Collateral review of a guilty plea is therefore "ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569 (1989). After he pled guilty, petitioner gave up his right to go to trial regarding the elements of the defense. Therefore, the Court will deny petitioner's habeas claim as to the failure to object to a presentence report.

**IV. Motion to Proceed IFP**

Petitioner filed a motion to proceed in forma pauperis in this action. Because there is no filing fee for a § 2255 motion, movant need not be granted in forma pauperis status in order to maintain this action. See Rule 3, Advisory Committee Notes of the Rules Governing Section 2255 Proceedings. Thus, to the extent that movant is seeking leave to initiate this action in forma pauperis, his request is moot.

**V. Conclusion**

Based on the foregoing, the Court will deny petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and deny petitioner's motion for leave to proceed in forma pauperis as moot.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner's motion to vacate, set aside, or correct sentence is **DENIED**. [Doc. 1]

**IT IS FURTHER ORDERED** that petitioner's remaining pending motions are **DENIED as moot**. [Docs. 2, 20, 21, 22, 23, 24, and 25]

**IT IS FURTHER ORDERED** that petitioner has not made a substantial showing of the denial of a constitutional right, and therefore this Court will not issue a certificate of appealability.

An appropriate judgment will accompany this memorandum and order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 2nd day of March, 2006.